ORIGINAL

UNITED STATES DISTRICT COURT
for the
Northern District of Texas

SEALED

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2015 AUG 17  PM 4: 08

DEPUTY CLERK_____

In the Matter of the Search of        )
*(Briefly describe the property to be searched*        )
*or identify the person by name and address)*        )        Case No.  5 - 1 5 M J 0 0 0 7 1
1714 Lovebird Road        )
Smyer, Texas        )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is attached to this application and hereby incorporated by reference.

located in the _____ Northern _____ District of _____ Texas _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment A, which is attached to this application and hereby incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 1038(a)(1) | False Information and Hoaxes |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
AUSA

_____
*Applicant's signature*

Michael N. Orndorff, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: August 17, 2015

_____
*Judge's signature*

City and state:  Lubbock, Texas

Nancy M. Koenig, United States Magistrate
*Printed name and title*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

|  |  |
|---|---|
| In the Matter of the Application of the United States Of America for (1) a Search Warrant for the Premises Known and Described as 1714 Lovebird Road, Smyer, Texas 79367 and Any Closed Containers/Items Contained Therein for the Purpose of Locating and Seizing a Black Apple iPad 2 Bearing Serial Number DYTJ23AGDFHW, and (2) a Search Warrant for a Black Apple iPad 2 Bearing Serial Number DYTJ23AGDFHW | **TO BE FILED UNDER SEAL**<br><br>**Agent Affidavit in Support of Application for Search Warrant**<br><br>**5 - 15 MJ 0 0 0 7 1** |

NORTHERN DISTRICT OF TEXAS) ss.:

MICHAEL N. ORNDORFF, being duly sworn, deposes and says:

## I.  Introduction

### A.  Affiant

1.      I have been a Special Agent with the Federal Bureau of Investigation ("FBI") for approximately 19 years.  In the course of my duties at the FBI, I have conducted or participated in surveillance, the tracking of suspects, and debriefings of informants.  I also have received training regarding computer fraud and have participated in the execution of search warrants involving electronic evidence.

2.      I make this Affidavit in support of an application pursuant to Rule 41 of the Federal Rules of Criminal Procedure for a warrant to (1) search the premises specified below ("Subject Premises") for the electronic device ("Subject Device") specified below and also described in Attachment A, and (2) to seize and search the Subject Device for the items and information described in Attachment A.  This affidavit is based upon my personal knowledge; my review of documents and other evidence; my conversations with other law enforcement personnel; and my training, experience and advice received concerning the use of computers in

2

criminal activity and the forensic analysis of electronically stored information ("ESI"). Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

**B.   The Subject Premises**

3.     The Subject Premises is particularly described as: (1) a single-story trailer home combined with a constructed add-on making it into an L-shaped structure (collectively, the "Trailer Home"); (2) a white with yellow trim trailer home located south of the residence; (3) several smaller outbuildings; and (4) all vehicles located on the property with the address 1714 Lovebird Road, Smyer, Texas 79367. An aerial view of the Subject Premises and two ground-level photographs of the Subject Premises are included as Attachment A-1, A-2, and A-3. The Trailer Home is beige in color with brown trim. The outer walls of the add-on portion of the Trailer Home are white in color and contain the word "Tyvek" in blue on them. The Trailer Home has a green-colored metallic roof. The south side of the Trailer Home has two windows with air conditioning units in them. The Trailer Home is hidden behind overgrown weeds, trees, and brush, so no numbering of the residence is viewable. A dirt driveway, located two tenths of a mile south of Bear Road, is located on the west side of Lovebird Road and leads to the east side of the Trailer Home.

**C.   The Subject Device**

4.     The Subject Device is particularly described as a Black Apple iPad 2 Bearing Serial Number DYTJ23AGDFHW and any storage media contained therein.

5.     Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at

3

https://support.apple.com/kb/sp622?locale=en_US, I know that the Subject Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.

6.      The Subject Device is presently located in the Northern District of Texas.

**D.   The Subject Offense**

7.      For the reasons detailed below, I believe that there is probable cause to believe that the Subject Device contains evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 1038(a)(1), among other statutes (the "Subject Offense").

**II.   Probable Cause**

**A.   Probable Cause Regarding Subject's Commission of the Subject Offense**

8.      On August 17, 2015, United States Magistrate Judge Debra Freeman of the Southern District of New York executed a sealed, one-count Complaint, 15 Mag. 2871 (the "Complaint") charging JASON PAUL SMITH, the defendant, with violating Title 18, United States Code, Section 1038(a)(1). The Complaint is incorporated herein and attached hereto as Attachment B.

**B.   Probable Cause Justifying Search of the Subject Device**

9.      As described in Paragraphs 3, 6, 7, and 8 of the Complaint referenced above and attached as Attachment B, there is probable cause to believe that the Subject Device was used to access a service, offered by a company that provides telephonic communications services to the hearing impaired, to place a 911 call on or about April 24, 2015 (the "911 Call"), to convey a hoax threat to blow up the Statue of Liberty, located in New York, New York. In addition, as described in Paragraphs 9, 10, 11, 12, 13, and 14 of the Complaint referenced above and attached as Attachment B, there is probable cause to believe that JASON PAUL SMITH, the defendant, is the user of the Subject Device.

4

10.     Like individuals engaged in any other kind of activity, individuals who engage in conduct with intent to convey false or misleading information or hoaxes store records relating to their illegal activity on electronic devices such as the Subject Device. Such records can include, for example, logs of the download and installation of software applications which allow users to place telephone calls from the Subject Device; logs of telephone calls made to 911, law enforcement offices or agencies, or law enforcement personnel using software applications which allow users to place telephone calls from the Subject Device; and Internet browser search histories showing searches related to the Statue of Liberty and other New York City landmarks or locations, and/or bomb-making and explosives. Individuals engaged in criminal activity often store such records in order to, among other things, keep a record of illegal activities for future reference.

11.     Computer files or remnants of such files can be recovered months or even years after they have been created or saved on an electronic device such as the Subject Device. Even when such files have been deleted, they can often be recovered, depending on how the hard drive has subsequently been used, months or years later with forensics tools. Thus, the ability to retrieve information from the Subject Device depends less on when the information was first created or saved than on a particular user's device configuration, storage capacity, and computer habits.

12.     In addition to probable cause to believe that the Subject Device contains evidence of the Subject Offense, there is also probable cause to believe that the Subject Device constitutes contraband subject to seizure, in that the device is an instrumentality of the Subject Offense, specifically, the Subject Device was used to place the 911 Call.

13.     Based on the foregoing, I respectfully submit there is probable cause to believe that JASON PAUL SMITH, the defendant, has engaged in conduct with intent to convey false or misleading information or hoaxes, and that evidence of this criminal activity is likely to be found on the Subject Device.

### C.   Probable Cause Justifying Search of the Subject Premises

14.     Based on my training and experience, I know that individuals who disseminate false or misleading information or hoaxes may do so from any location that is connected to the Internet or has a telephone line.   Based on my training and experience, I also know that individuals typically keep their electronic devices at the residences where they are living on either a temporary or permanent basis.

15.     As described in Paragraph 13 of the Complaint referenced previously and attached as Attachment B, there is probable cause to believe that JASON PAUL SMITH, the defendant, traveled to, and has remained in, the vicinity of Lubbock, Texas, in the Northern District of Texas, starting in or around June 2015.

16.     As described in Paragraph 13 of the Complaint referenced previously and attached as Attachment B, there is probable cause to believe that an Apple iPad registered to JASON PAUL SMITH, the defendant, (the "SMITH iPad") made transactions in iTunes, received iTunes updates, and connected to an Apple application using various internet protocol ("IP") addresses[1] associated with the vicinity of Lubbock, Texas.   Based on my review of Internet services provider records and my interviews with other law enforcement personnel, I

---

[1] Based on my training and experience, I have learned that an IP address is a unique identifier that all computing devices, including iPads, use to identify themselves while using a computer network.  Every computing device connected to a computer network has a unique IP address within that network.  In addition, the IP address indicates the general geographic location of the device at the time the device is using the network.

have learned that the subscribers of certain of the IP addresses used by the SMITH iPad are public businesses, including Starbucks, Mad Hatters House of Games, and St. Joseph Health Systems, with listed addresses in the vicinity of Lubbock, Texas.

17.     Based on my participation in this investigation, my interviews with other law enforcement personnel, and my review of publicly-viewable postings on Facebook, I believe that JASON PAUL SMITH, the defendant, is currently in a romantic relationship with an individual named Kimberly Mckandles. The publicly-viewable profile photograph dated on or about July 22, 2015 on SMITH's Facebook page shows SMITH being hugged from behind by a female. An individual named "Lisa Ashley" posted a comment to SMITH's profile photograph which stated, "Mary that isn't Jason's mom. That is Jason's new Girlfriend." A different individual named "Kim Mckandles" posted a comment to SMITH's profile photograph which stated, "It s my bf [boyfriend] not my son lol." Meanwhile, the publicly-viewable profile photograph dated on or about July 31, 2015 on the Facebook page of Kim Mckandles shows SMITH next to the same female who appears in SMITH's Facebook profile photograph and is captioned "KIM LOVES JASON." Various comments posted to Mckandles's profile photograph describe the two as a "Cute couple" and a "Lovely and wonderful couple." In addition, a publicly-viewable post dated on or about August 3, 2015 on Mckandles's Facebook page stated, "Jason Paul Smith took some Sunset and beauty rainbow after bad storm. – [emoticon] feeling blessed with Jason Paul Smith." Moreover, a publicly-viewable post dated on or about August 7, 2015 on Mckandles's Facebook page stated, "I m going to coffee place at big united markwt store for deaf gather..wonder who will go there tonighr at 7pm.." and a subsequently reply that same day added, "Yes jason going with me he forget put on my fb."

18.     Based on my participation in this investigation, my interviews with other law enforcement personnel, and my review of LexisNexis records, I have learned that an individual named Kimberly Mckandles lives at the address 1714 Lovebird Road, Smyer, Texas 79367, *i.e.*, the Subject Premises.

19.     Based on my participation in this investigation, my interviews with other law enforcement personnel, and my review of publicly-viewable postings on Facebook, I believe that JASON PAUL SMITH, the defendant, is currently residing at the Subject Premises with Kimberly Mckandles.  Based on my participation in this investigation and my interviews with other law enforcement personnel, I have learned that, on or about August 10, 2015, FBI Special Agents observed an individual who, based on photographs from the West Virginia Division of Motor Vehicles and SMITH's publicly-viewable Facebook profile, appeared to be SMITH along with two other individuals—one of whom, based on photographs from SMITH's and Mckandles's publicly-viewable Facebook profiles, appeared to be Mckandles—leaving Covenant Health, a hospital that is part of the St. Joseph Health Systems located in Lubbock, Texas, and driving to and entering the Subject Premises.  On this occasion, SMITH was observed carrying an iPad.  FBI Special Agents conducted surveillance of the Subject Premises until approximately 7:00 in the evening Central Standard Time and did not observe SMITH leaving the Subject Premises.  In addition, a publicly-viewable post dated on or about August 3, 2015, on Mckandles's Facebook page stated, "Jason Paul Smith took some Sunset and beauty rainbow after bad storm. – [emoticon] feeling blessed with Jason Paul Smith," and included three photographs of landscape.  Based on my participation in this investigation, I believe the landscape depicted in those photographs is consistent with the landscape surrounding the vicinity of the Subject Premises.

20.    Based on the foregoing, I respectfully submit there is probable cause to believe that a search of the Subject Premises is likely to yield the Subject Device.

## III.  Procedures for Searching ESI

### A.  Execution of Warrant for ESI

21.    Federal Rule of Criminal Procedure 41(e)(2)(B) provides that a warrant to search for and seize property "may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information . . . for later review."  Consistent with Rule 41, this application requests authorization to seize any computer devices and storage media and transport them to an appropriate law enforcement facility for review. This is typically necessary for a number of reasons:

- First, the volume of data on computer devices and storage media is often impractical for law enforcement personnel to review in its entirety at the search location.

- Second, because computer data is particularly vulnerable to inadvertent or intentional modification or destruction, computer devices are ideally examined in a controlled environment, such as a law enforcement laboratory, where trained personnel, using specialized software, can make a forensic copy of the storage media that can be subsequently reviewed in a manner that does not change the underlying data.

- Third, there are so many types of computer hardware and software in use today that it is impossible to bring to the search site all of the necessary technical manuals and specialized personnel and equipment potentially required to safely access the underlying computer data.

- Fourth, many factors can complicate and prolong recovery of data from a computer device, including the increasingly common use of passwords, encryption, or other

features or configurations designed to protect or conceal data on the computer, which often take considerable time and resources for forensic personnel to detect and resolve.

**B.   Review of ESI**

22.     Following seizure of any computer devices and storage media and/or the creation of forensic image copies, law enforcement personnel (including, in addition to law enforcement officers and agents, and depending on the nature of the ESI and the status of the investigation and related proceedings, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) will review the ESI contained therein for information responsive to the warrant.

23.     In conducting this review, law enforcement personnel may use various techniques to determine which files or other ESI contain evidence or fruits of the Subject Offenses.  Such techniques may include, for example:

- surveying directories or folders and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

- conducting a file-by-file review by "opening" or reading the first few "pages" of such files in order to determine their precise contents (analogous to performing a cursory examination of each document in a file cabinet to determine its relevance);

- "scanning" storage areas to discover and possibly recover recently deleted data or deliberately hidden files; and

- performing electronic keyword searches through all electronic storage areas to determine the existence and location of search terms related to the subject matter of the investigation. (Keyword searches alone are typically inadequate to detect all information subject to seizure. For one thing, keyword searches work only for text data, yet many types of files, such as images and videos, do not store data as searchable text.  Moreover, even as to text data, there may be information properly subject to seizure but that is not captured by a keyword search because the information does not contain the keywords being searched.)

24.     Law enforcement personnel will make reasonable efforts to restrict their search to data falling within the categories of evidence specified in the warrant.   Depending on the circumstances, however, law enforcement personnel may need to conduct a complete review of all the ESI from seized devices or storage media to evaluate its contents and to locate all data responsive to the warrant.

## C.  Return of ESI

25.     If the Government determines that the electronic devices are no longer necessary to retrieve and preserve the data, and the items are not subject to seizure pursuant to Federal Rule of Criminal Procedure 41(c), the Government will return these items, upon request.   Computer data that is encrypted or unreadable will not be returned unless law enforcement personnel have determined that the data is not (i) an instrumentality of the offense, (ii) a fruit of the criminal activity, (iii) contraband, (iv) otherwise unlawfully possessed, or (v) evidence of the Subject Offenses.

**IV.  Conclusion and Ancillary Provisions**

26.     Based on the foregoing, I respectfully request the court to issue a warrant to seize

the items and information specified in Attachment A to this affidavit and to the Search and

Seizure Warrant.

27.     In light of the confidential nature of the continuing investigation, I respectfully

request that this affidavit and all papers submitted herewith be maintained under seal until the

Court orders otherwise.

MICHAEL N. ORNDORFF
Special Agent
Federal Bureau of Investigation

Sworn to before me on
this __17__ th day of August, 2015

HONORABLE NANCY M. KOENIG
UNITED STATES MAGISTRATE JUDGE

**Attachment A**

## I.  Premises to be Searched—Subject Premises

The premises to be searched (the "Subject Premises") is described as follows, and includes all locked and closed containers found therein:

- The Subject Premises is particularly described as: (1) a single-story trailer home combined with a constructed add-on making it into an L-shaped structure (collectively, the "Trailer Home"); (2) a white with yellow trim trailer home located south of the residence; (3) several smaller outbuildings; and (4) all vehicles located on the property with the address 1714 Lovebird Road, Smyer, Texas 79367.  An aerial view of the Subject Premises and two ground-level photographs of the Subject Premises are included as Attachment A-1, A-2, and A-3.  The Trailer Home is beige in color with brown trim.  The outer walls of the add-on portion of the Trailer Home are white in color and contain the word "Tyvek" in blue on them.  The Trailer Home has a green-colored metallic roof.  The south side of the Trailer Home has two windows with air conditioning units in them.  The Trailer Home is hidden behind overgrown weeds, trees, and brush, so no numbering of the residence is viewable.  A dirt driveway, located two tenths of a mile south of Bear Road is located on the west side of Lovebird Road and leads to the east side of the Trailer Home.

## II.  Item to Be Seized

The item to be seized from the Subject Premises and searched (the "Subject Device") is described as follows:

- a Black Apple iPad 2 Bearing Serial Number DYTJ23AGDFHW and any storage media contained therein

## III.  Review of ESI on the Subject Device

Law enforcement personnel (including, in addition to law enforcement officers and agents, and depending on the nature of the ESI and the status of the investigation and related proceedings, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the ESI contained on the Subject Device for the following evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 1038(a)(1) (the "Subject Offense"):

1.      Any and all notes, documents, photographs, records, correspondence, or materials, in any format and medium (including, but not limited to, e-mail messages, chat logs, telephone logs, electronic messages, and other digital data files and web cache information), pertaining to telephone calls placed to 911, law enforcement offices or agencies, or law enforcement personnel.

2.      Any and all notes, documents, photographs, records, correspondence, or materials, in any format and medium (including, but not limited to, e-mail messages, chat logs, telephone logs, electronic messages, and other digital data files and web cache information), pertaining to any software applications on the Subject Device capable of placing telephone calls.

3.      Any and all notes, documents, photographs, records, correspondence, or materials, in any format and medium (including, but not limited to, e-mail messages, chat logs, telephone logs, electronic messages, and other digital data files and web cache information), pertaining to explosives or bomb-making.

4.      Any and all notes, documents, photographs, records, correspondence, or materials, in any format and medium (including, but not limited to, e-mail messages, chat logs, telephone logs, electronic messages, and other digital data files and web cache information), pertaining to New York City, New York, including, but not limited to, the Statue of Liberty, Liberty Island, Times Square, the Brooklyn Bridge, and the New York City Police Department.



## 1714 Lovebird Rd
1714 Lovebird Rd, Lubbock, TX 79407





A-1





**Attachment B**

**Complaint**



Approved: _____
DAVID ZHOU
Assistant United States Attorney

Before:    THE HONORABLE DEBRA FREEMAN
           United States Magistrate Judge
           Southern District of New York

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                  :    SEALED COMPLAINT

        - v. -                            :    Violation of
                                          :    18 U.S.C. § 1038(a)(1)
JASON PAUL SMITH,                         :

                      Defendant.          :

- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

        ALEXANDER HIRST, being duly sworn, deposes and says
that he is a Special Agent with the Federal Bureau of
Investigation ("FBI") and a member of the Joint Terrorism Task
Force ("JTTF"), and charges as follows:

## COUNT ONE
(False Information and Hoaxes)

        1.   On or about April 24, 2015, in the Southern
District of New York and elsewhere, JASON PAUL SMITH, the
defendant, knowingly did engage in conduct with intent to convey
false and misleading information under circumstances where such
information may reasonably be believed and where such
information indicated that an activity had taken, was taking, or
would take place that would constitute a violation of Title 18,
United States Code, Sections 2332a(a) and 2332f(a), to wit,
SMITH conveyed a hoax threat to "blow up" the Statue of Liberty.

        (Title 18, United States Code, Section 1038(a)(1).)

        The bases for my knowledge and for the foregoing
charge are, in part, as follows:

        2.   I am a Special Agent for the FBI assigned to the
JTTF and I have been personally involved in the investigation of

this matter.  This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement officers, witnesses and others, as well as my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

3.   Based on my review of recordings relating to a call that was received by  New York City's emergency 911 system on or about April 24, 2015 (the "911 Call") and my review of records associated with the 911 Call, I have learned the following:

a.   On or about April 24, 2015, an individual later believed to be JASON PAUL SMITH, the defendant, accessed a service offered by a company that provides telephonic communications services to the hearing impaired ("Company 1") to initiate a call to the emergency 911 system.  During the call, SMITH identified himself as "Abdul Yasin,"[1] described himself as an "ISI terrorist," and provided a street address in New York, New York.  SMITH also stated, in sum and substance, that "we" were preparing to "blow up" the Statue of Liberty.

b.   The call initiated by SMITH on or about April 24, 2015 was received by an employee (the "Relay Agent") of an emergency call center that, among other services, relays calls made to 911 to the appropriate 911 call center ("Company 2").  The Relay Agent then, in turn, called a 911 operator (the "911 Operator") for New York City's emergency 911 system who was located in the Southern District of New York (i.e., the 911 Call).

c.   During the 911 Call to the 911 Operator, the Relay Agent informed the 911 Operator that he/she had an open line with a recording in the background.  The Relay Agent then explained that, in the recording, the caller stated an intention to blow up the Statue of Liberty.  The Relay Agent further

---

[1] Based on my training and experience, I know that "Abdul Yasin" is the name of the last remaining fugitive charged in Indictment 93 Cr. 180 (KTD) (S.D.N.Y.) for the February 26, 1993 bombing of the World Trade Center.

informed the 911 Operator that the caller identified himself by the name "Abdul Yasin," and that the 911 Call originated from a particular telephone number with a New York City area code (the "Phone Number").

4. Based on my review of publicly-viewable information on the Facebook page for JASON PAUL SMITH, the defendant, I have learned that SMITH notes that he attended a school for the deaf and blind.

5. Based on my interviews with law enforcement officers who responded to the threat conveyed in the 911 Call, I have learned the following:

a. Following the 911 Call, law enforcement officers conducted a sweep of the areas in and around the Statue of Liberty and Liberty Island with the aid of canine units trained to detect the presence of explosives. Canine units alerted to an area of interest near the visitor lockers at the base of the Statue of Liberty.

b. Law enforcement officers then evacuated all civilians from the Statue of Liberty and Liberty Island. In total, approximately 3,229 people were evacuated.

c. Following the evacuation, law enforcement officers determined that the threat conveyed by the 911 Call was unfounded.

6. Based on my review of publicly-available information and my conversations with an employee of Company 1, I have learned the following:

a. Company 1 provides a service that assists individuals with hearing impairments with making and receiving telephone calls (the "Service"). The Service can be accessed using the Internet, among other ways.

b. After an individual user creates a free account with the Service, a telephone number is assigned to the individual user. To create an account, the individual must supply, among other things, a username and an email address. Company 1 does not verify the information provided by a user when an account is created.

c. Once an account is created, the Service allows a user to speak into the device that was used to access

3

the Service, and the recipient to hear those spoken words in
real-time.  If the recipient verbally responds, the Service
transcribes the response in real-time, allowing the user to read
captions of the recipient's verbal responses on the screen of
his/her electronic device.

      d.   When a user initiates a 911 call using the
Service, the Service first engages one of its captioning agents
and then dials out to a Company 2 Relay Agent.  The Company 2
Relay Agent then verbally asks the user to provide his name and
location, and the Service transcribes that dialogue in real-
time.  If the user responds, the Company 2 Relay Agent uses the
supplied information to connect the call to the appropriate 911
call center.  However, if the user does not respond, the Company
2 Relay Agent uses the telephone number previously assigned to
the user to locate, and then transmit the call to, the
appropriate 911 call center.

      e.   The Service can be downloaded to devices
running the Apple operating system, such as an iPad.  An
individual user can make relay calls by connecting to the
Service using a wireless Internet connection.

      7.   Based on my review of records obtained from
Company 1, I have learned that the Phone Number – i.e., the
telephone number that initiated the 911 Call – was assigned to a
particular account established through the Service (the
"Account").

      8.   Based on my review of communications records, I
have learned that the Account was accessed numerous times,
including on or about April 24, 2015 – i.e., the date of the 911
Call that conveyed the hoax threat – by an Apple iPad using an
internet protocol ("IP") address[2] that resolves to a particular
address in West Virginia (the "West Virginia Address").  Based
on the subscriber's surname, the subscriber of this IP address
appears to be a relative of JASON PAUL SMITH, the defendant.

---

    [2] Based on my training and experience, I have learned that
an IP address is a unique identifier that all computing devices,
including iPads, use to identify themselves while using a
computer network.  Every computing device connected to a
computer network has a unique IP address within that network.
In addition, the IP address indicates the general geographic
location of the device at the time the device is using the
network.

9.   Based on information I have reviewed, I believe that, on or about April 24, 2015, JASON PAUL SMITH, the defendant, resided at the West Virginia Address.  For example, records for SMITH's debit card indicate that he resides at the West Virginia Address.  In addition, SMITH lists the West Virginia Address as his address on the publicly-viewable portion of his Facebook account.  Finally, according to records obtained from an Internet Services Provider, SMITH maintains an email account that lists the West Virginia Address as his address.

10.   Moreover, based on my review of records obtained from Apple, I have learned that an Apple iPad is registered to JASON PAUL SMITH, the defendant, (the "SMITH iPad") at the West Virginia Address.  I also have learned from records obtained from Apple that, on or about April 24, 2015, the SMITH iPad received updates from Apple and connected to an Apple application from the same IP address that resolves to the West Virginia Address.

11.   Based on my review of records obtained from the Internet Services Provider, Company 1, and Apple, several different accounts have been created on the Service provided by Company 1 using the IP address that resolves to the West Virginia Address.  One of the email addresses provided to create one of the accounts (the "SMITH Email Address") is the email address provided as a backup email address on both SMITH's Apple account and SMITH's email account referenced in paragraph 9 above.   The SMITH Email Address is also listed as one of SMITH's email addresses on SMITH's publicly-viewable Facebook page.

12.   Based on my review of communications records, I have learned that the account associated with the SMITH Email Address was used to make 18 calls to the 911 emergency service from January 29, 2015 through January 31, 2015.  Each of those 18 calls was made with an iPad from the IP address that resolves to the West Virginia Address.

13.   Based on records obtained from Apple, I have learned that, starting on or about June 11, 2015, the SMITH iPad made transactions in iTunes, received iTunes updates, and connected to an Apple application using various IP addresses associated with the vicinity of Lubbock, Texas.   Similarly, according to publicly-viewable postings on SMITH's Facebook page, starting in or around June 2015, SMITH's location has been listed as Lubbock, Texas.  Moreover, in a publicly-viewable post on SMITH's Facebook page dated on or about June 27, 2015, SMITH wrote, "I m in LUBBOCK, TX..WEST VIRGINIA ALOT mountains... In

here nothing very flat lol." Furthermore, in a publicly-
viewable post on SMITH's Facebook page dated on or about August
5, 2015, SMITH wrote, "Yes I am still in Lubbock, Texas.. WHY."
In addition, based on my interview with a Special Agent of the
FBI assigned to the Dallas Division, Lubbock Resident Agency in
Texas, I have learned that FBI Special Agents observed an
individual who, based on photographs from the West Virginia
Division of Motor Vehicles and SMITH's publicly-viewable
Facebook profile, appeared to be SMITH at various locations in
the vicinity of Lubbock, Texas, on or about August 10, 2015.  On
these occasions, SMITH was observed carrying an iPad.

14.  Based on my review of communications records,
records obtained from Apple, and my interviews with law
enforcement officers, I have learned the following:

a.  On or about May 18, 2015, at least two calls
made to 911 conveyed threats to blow up a bridge at Times
Square, and to kill police officers at the Brooklyn Bridge,
respectively.  Both calls were transmitted to the 911 call
centers through the Service.

b.  The Service account that placed both calls
had the user name "Isis allah Bomb maker" and was accessed on or
about May 18, 2015, by an Apple iPad from the IP address that
resolves to the West Virginia Address.

c.  On or about May 18, 2015, the SMITH iPad
received updates from Apple and connected to an Apple
application from the same IP address that resolves to the West
Virginia Address.

15.  Based on my review of the criminal records of
JASON PAUL SMITH, the defendant, I have learned the following:

a.  On or about October 29, 2001, SMITH was
convicted in Staunton Circuit Court, Virginia, of communicating,
in writing, threats of death or bodily injury, in violation of
Virginia Code § 18.2-60.

b.  On or about May 2, 2006, SMITH was convicted
in Staunton Circuit Court, Virginia, of threating to bomb or
burn buildings, in violation of Virginia Code § 18.2-83; of
communicating, in writing, threats of death or bodily injury, in
violation of Virginia Code § 18.2-60; and of calling or
summoning ambulance or fire-fighting apparatus without just
cause, in violation of Virginia Code § 18.2-212.

16.   Based on the foregoing, I believe that, on or
about April 24, 2015, JASON PAUL SMITH, the defendant, used the
SMITH iPad, to access the Service in order to make the 911 Call,
that conveyed a hoax threat to blow up the Statue of Liberty,
resulting in the evacuation of more than 3,000 people from the
Statute of Liberty and Liberty Island.   I also know, based on my
training and experience, that an actual bombing of the Statue of
Liberty would have violated Title 18, United States Code,
Sections 2332a(a) and 2332f(a).

WHEREFORE, deponent respectfully requests that a
warrant issue for the arrest of JASON PAUL SMITH, the defendant,
and that he be imprisoned or bailed, as the case may be.

Alexander Hirst
Special Agent
Federal Bureau of Investigation

Sworn to before me this
___/7th day of August, 2015

THE HONORABLE DEBRA FREEMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

7